# UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ERICKSON AIR-CRANE, INC.,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 07-519 (Lettow)<br>Bid Protest |

## SECOND DECLARATION OF LANNIS ALLMARAS

I declare under penalty of perjury that the following is true and correct:

1. I am currently the North America and Australia Firefighting Program Manager for Erickson Air-Crane, Inc. I have held this position since 1997. Previously, I was employed by the United States Forest Service and the United States Department of the Interior beginning in 1965. I have over 42 years of experience in wildfire and prescribed fire programs within the public and private sectors. For 39 years, my focus has been on the aviation aspects of fire programs specifically related to helicopter operations and management.

2. I reaffirm all of the statements I made in my First Declaration of July 10, 2007 that was submitted to the Court. A copy of that declaration is attached.

3. I have reviewed the administrative record produced by the government on July 18, 2007 in this case, including the "UTF Count Report" included at Tab 5. The Administrative Record does not describe or explain the significance of this document to the written



Ex. 2

determination of the Forest Service to override the automatic stay of contract performance. However, I am familiar with this type of report based on my prior 30 years of experience working for the Forest Service and the Department of the Interior and my many years of experience in and knowledge of the helicopter firefighting industry.

4. The UTF report counts all unfilled orders for helicopters. It does not distinguish between orders for helicopters under exclusive use and Call When Needed ("CWN") contracts or identify the reason why a particular order could not be filled. Whenever an incident commander or other authorized personnel desires a helicopter, he places a request for a helicopter. Generally, the request is first made to the Geographic Area Coordination Center ("GACC") in which the fire is located and the GACC attempts to fill the order from helicopters assigned to that Geographic Area, including helicopters in the "national" fleet that are based within the Geographic Area. If it is unable to fill the request from within the Geographic Area, the GACC sends a request to the National Interagency Coordination Center ("NICC") in Boise, Idaho. The NICC fills the orders it receives with any available helicopter, no matter if the helicopter has been assigned to another Geographic Area or is part of the "national" fleet. All requests to the NICC are counted in the UTF report until the NICC fills the order or the order is "killed." Generally, NICC assigns helicopters to the areas with the greatest need first.

5. The UTF report reflects only a snapshot in time. Helicopter availability can change daily, sometimes hourly, as helicopters are released or reassigned. The NICC's database is not necessarily updated immediately to reflect demand and actual field conditions as orders are filled or killed.

6. The number of unfilled orders generally is not affected by the number of helicopters available to the Forest Service under a particular <u>type</u> of contract. Rather, the

number of orders that the Forest Service can fill is affected by the number of helicopters operators choose to make available to the Forest Service by contract. When the Forest Service executes an exclusive use contract, the total number of helicopters that it has available does not change. While executing a new exclusive use contract increases the number of helicopters under exclusive use contracts by one, because that helicopter can no longer accept CWN work, the number of helicopters available to the Forest Service under CWN contracts correspondingly decreases by one. Stated another way, if the Forest Service were to place every helicopter under an exclusive use contract it would not necessarily have any more resources to fight fire than if it obtained CWN orders for every helicopter.

7. In paragraph 14 of the override determination, the Chief states that the exclusive use contracts are necessary to guarantee the availability of 35 helicopters. As I explained in my first declaration, once an operator accepts an order for a helicopter under its CWN contract, that helicopter is controlled by the Forest Service until it is released. While generally the Forest Service releases a helicopter after it has finished working on a single incident, nothing in the CWN contract prevents the Forest Service from requiring the helicopter to move from incident to incident. Moreover, nothing in the CWN contract prevents the Forest Service from ordering a helicopter prior to the outbreak of a fire in order to have it immediately available should one break and, in my experience, the Forest Service has often done just this.

8. When operators pre-position their helicopters, the Forest Service does not need to order helicopters prior to the outbreak of fire to have them immediately available. Pre-positioning is when operators at their own expense move a helicopter to where a fire outbreak is anticipated and keep it ready and available for work. Operators pre-position because the Forest Service considers the proximity of a helicopter to a fire in placing CWN orders. Erickson has

pre-positioned some of its helicopters in the past and has done so this year in order to be immediately available to accept CWN orders.

9. It is my understanding that the Forest Service has ordered approximately 5 to 7 additional helicopters under contract clause C-33 of the new exclusive use contracts during the last few weeks. The ability of the Forest Service to do so demonstrates that if the stay is reinstated, the Forest Service will have clause C-33 of its prior exclusive use contracts available as a means to obtain some of the 18 helicopters needed to meet its firefighting needs during the stay. As I stated in my first declaration, Erickson had such an exclusive use contract, no. AG-024B-C-05-9096, with the Forest Service until July 7, 2007, when the Forest Service notified us that it had terminated the contract.

10. By continuing to override the stay and receive its helicopter firefighting services under the 18 exclusive use contracts that are the subject of Erickson's protest to GAO, the Forest Service is taking away 18 opportunities for Erickson to receive CWN orders for those locations during the stay.

11. Additionally, the 18 new exclusive use contracts will also reduce the Forest Service's need for CWN helicopters at <u>other</u> locations. Because the Forest Service pays for an exclusive use helicopter each day whether it fights fire or not, it is in the Forest Service's interests to ensure that an exclusive use helicopter is constantly fighting fire. Therefore, if an exclusive use helicopter is sitting idle in one location, the Forest Service will send it to another location to fight fire. Moreover, the Forest Service can use clause C-33 of the new exclusive use contracts to order additional helicopters rather than place a CWN order to meet its firefighting needs.

7/26/2007
Date

Lannis Allmaras