**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ERICKSON AIR-CRANE, INC., Plaintiff, | No. 07-519C (Lettow) |
| v. | Bid Protest |
| UNITED STATES OF AMERICA, Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AND REQUESTS FOR DECLARATORY JUDGMENT AND PERMANENT INJUNCTIVE RELIEF**

Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Ruth G. Tiger
Eric J. Pohlner
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: August 6, 2007

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ........ ii

Introduction ........ 1

I. The Chief's Override Determination Was Arbitrary and Capricious ........ 3

II. Erickson Is Entitled To Injunctive Relief ........ 10

Conclusion ........ 12

# TABLE OF AUTHORITIES

**CASES** **PAGE**

Advanced Sys. Dev., Inc. v. United States,
72 Fed. Cl. 25 (2006) ........ 2, 9

Chapman Law Firm Co. v. United States,
67 Fed. Cl. 188 (2005) ........ 11, 12

Esch v. Yeutter,
876 F.2d 976 (D.C. Cir. 1989) ........ 2

Hospital Klean of Texas, Inc. v. United States,
65 Fed. Cl. 618 (2005) ........ 11, 12

Overstreet Elec. Co., Inc. v. United States,
47 Fed. Cl. 728 (2000) ........ 12

Reilly's Wholesale Produce v. United States,
73 Fed. Cl. 705 (2006) ........ 12

Seattle Sec. Services, Inc. v. United States,
45 Fed. Cl. 560 (2000) ........ 12

**Introduction**

According to defendant, in deciding to override the automatic stay of contract performance imposed as a result of the timely filing by Erickson Air-Crane, Inc. ("Erickson") of a protest challenging the Forest Service's decision to reject Erickson's proposal, the Chief of the Forest Service ("Chief") "weighed the competing factors of public safety, potential for delay, cost and potential ramifications of the protests being sustained by GAO, and concluded that the override was in the best interest of the United States." Defendant's Motion for Judgment Upon the Administrative Record and Opposition to Plaintiffs' Motions [hereinafter "Def. Opp."] at 13. Contrary to this bald assertion, however, the Chief did not weigh these factors. Rather, as the override determination itself and the administrative record demonstrate, the override determination was based almost exclusively on the unreasonable determination by the Forest Service that the only way in which it could guarantee helicopter availability and thereby protect the public this firefighting season was by means of the override. This conclusion was unreasonable because the Chief did not objectively consider other contractual mechanisms at the Forest Service's disposal to guarantee helicopter availability to protect the public.

As demonstrated by the many years in which the Forest Service has relied principally on Call When Needed ("CWN") contracts to guarantee helicopter availability to meet its helicopter firefighting needs and protect the public, there is no reason why the Forest Service could not continue to rely principally on CWN contracts to guarantee helicopter availability and meet its firefighting needs and protect the public until the Government Accountability Office ("GAO") decides the merits of Erickson's protest. The override determination and the administrative record filed by defendant do not demonstrate otherwise. Instead, they reflect only that the Forest

Service decided to move away from its principal reliance on CWN contracts based on the asserted but undocumented limited availability of CWN helicopters at the beginning of the 2006 fire fighting season and that greater reliance on exclusive use contracts was a better mechanism to guarantee availability. It is well-established that it is insufficient justification for an override determination that the agency deems a new contract to be better than a contract already in place. See Advanced Sys. Dev., Inc. v. United States, 72 Fed. Cl. 25, 31 (2006).

In response to the demonstration by Erickson that there were reasonable alternatives to the override determination that the Chief failed to consider objectively, defendant claims that the determination was based not just on the insufficient newer-is-better justification. Instead, defendant contends that the override was necessary to avoid risk to public safety. However, information that was reasonably available to the agency but not included in the administrative record makes clear that the override was not necessary to avoid risk to public safety and that continued reliance on existing contractual mechanisms could be used to guarantee helicopter availability in lieu of taking the extraordinary step of overriding the automatic stay of contract performance.[1] Because such relevant information was not included in the material presented to

[1]Defendant objects to the Court's consideration of material not included by it in the administrative record, including the testimony and argument presented at the temporary restraining order ("TRO") hearing and the affidavits attached to Erickson's briefs. See Def. Opp. at 8 n.4. Concurrently with the filing of this brief, Erickson is filing a formal motion to supplement the administrative record. Materials demonstrating the agency's failure to consider reasonable alternatives to the override determination are properly considered by the Court as a supplement to the administrative record prepared by defendant. See Advanced Sys. Dev., 72 Fed. Cl. at 34 (supplementation appropriate when agency fails to consider factors relevant to its final decision) (citing Esch v. Yeutter, 876 F.2d 976 (D.C. Cir. 1989). Were this not the case, the Court would be asked to review the propriety of a determination to override the automatic CICA stay based only on the limited information the agency chose to make available to the head of the contracting agency, without the ability to consider that the decision was unreasonable because

the Chief, the override determination was not based on consideration of all relevant factors and the determination of the Chief to override the automatic stay was unreasonable as a result.

## I. The Chief's Override Determination Was Arbitrary And Capricious

Contrary to defendant's assertions, the override of the automatic stay of contract performance of the exclusive use contracts awarded under the challenged procurement was not necessary because a reasonable alternative available to the Forest Service was to continue to rely principally on its existing contractual mechanisms to meets its firefighting needs, just as it did during last year's well-above-average fire season. However, defendant asserts that only the override could guarantee the availability of helicopter firefighting services this fire season because of "the limited availability of helicopters" and the reasonable expectation that there would be an above-average volume of fires that needed to be fought this year. Def. Opp. at 13. Defendant offers as support for this assertion two reports which together show that the Forest Service had 55 helicopters deployed as of July 5, 2007 and was purportedly unable to fill at least 25 orders for heavy and medium helicopters on July 9, 2007. Id.

Defendant does not contend and there is nothing in the administrative record to suggest that the Forest Service was unable to guarantee helicopter availability to meet its firefighting needs during 2006's extraordinary fire season. Even assuming that the 2007 fire season is likely to be similarly extraordinary, there is nothing in the record to support the contention that these circumstances required the Forest Service to override the automatic stay and go forward with the

---

there was additional relevant information about alternatives to an override that should have been but was not considered.

new exclusive use contracts in order to guarantee helicopter availability to meet its firefighting needs this year. In fact, the Forest Service's experience during last year's extraordinary fire season demonstrates just the contrary. It does not appear from the record that the Forest Service's experience last year in meeting its firefighting needs relying primarily upon CWN contracts was presented to the Chief as something to consider in deciding whether there were reasonable alternatives to overriding the stay.

To support the contention in the override determination that the helicopters available to the Forest Service under CWN contracts has been depleted, defendant principally relies on the UTF Count Report included in the administrative record. Administrative Record [hereinafter "AR"] at 19. Although not mentioned anywhere in the override determination, defendant now asserts that because the UTF Count Report shows that there were unfilled orders for heavy and medium helicopters on July 9, 2007, the date of the override determination, the Chief reasonably determined that the supply of CWN helicopters had been depleted. Def. Opp. at 14. Presumably, defendant also relies on this document to show that there was no reasonable alternative to overriding the stay.

Even assuming that the Chief actually considered the information in the UTF Count Report, something not apparent from either the override determination itself or from the administrative record, nothing in that report demonstrates that there were an insufficient number of CWN helicopters, or CWN helicopters coupled with helicopters available to the Forest Service under existing exclusive use contracts, available to meet the Forest Service's firefighting needs while GAO decides Erickson's protest. As Erickson explained in its initial brief, the UTF

report is a snapshot in time and may not necessarily reflect that a helicopter order has already been filled or has been cancelled or the reasons why an order may have been designated unable to fill. Plaintiff's Memorandum of Law in Support of its Motion for Preliminary Injunction and Request for Declaratory Judgment and Permanent Injunctive Relief [hereinafter "Erickson Br."] at 19-20. Explaining the meaning of an at best ambiguous document included without explanation in the administrative record complied by defendant is not "second-guessing" the evidence, but is offered to demonstrate that the conclusions reached in the override determination which may have relied on an inaccurate interpretation of what this document showed were unreasonable.[2]

To the extent that the UTF Count Report is offered to show that on the date of the override determination, the pool of exclusive use and CWN contracts at the time were insufficient to meet the Forest Service's helicopter firefighting needs because there were at least 25 orders that the Forest Service was unable to fill, the Forest Service's own administrative contracting decisions were at least partly responsible. For example, on Saturday, July 7, 2007, two days before the Forest Service generated the UTF Count Report included in the administrative record and the Chief determined that the unavailability of needed helicopter firefighting services justified an override, the Forest Service cancelled its exclusive use contract with Erickson. Def. Opp. at 16; Erickson Br. at 12. Thus, it is likely that the number of unable to fill orders on July 9, 2007 was artificially inflated due to the Forest Service's administrative decision to cancel at least one of its exclusive use contracts two days earlier. The Court should

[2]Notably, defendant does not take issue with Erickson's description of the UTF Count Report, asserting only that the Court should ignore Erickson's information because it is not part of the administrative record. See Def. Opp. at 8 n.4, 14.

not allow the Forest Service to justify an override determination based on an asserted urgent and compelling need for exclusive use helicopters when the Forest Service created that need in part by cancelling at least one of its existing exclusive use contracts just two days before issuing the override determination.

Defendant also contends that the override was justified because 55 helicopters had already been committed to firefighting activities as of July 5, 2007. Def. Opp. at 5. Defendant contends that the fact that 55 helicopters were already committed, coupled with the at least 25 orders that the Forest Service was unable to fill on July 9, 2007, demonstrates that the agency reasonably concluded that there was a risk that it would be unable to meet its firefighting needs absent the override. Def. Opp. at 13-14. But nothing in the administrative record demonstrates the relevance of the commitment of 55 helicopters as of July 5, 2007. It appears from the record that this number includes all types of helicopters, including light, Type III, helicopters. The commitment of a number of light helicopters to fight fire as of July 5, 2007 is irrelevant to the Court's consideration of the reasonableness of the stay override in this case because only heavy and medium, Type I and Type II, helicopters have anything to do with the Chief's override determination.

Even if 55 heavy and medium helicopters had already been committed to the Forest Service to fight fire as of July 5, 2007, nothing in the administrative record explains how this figure supports the Chief's determination that the fleet of CWN helicopters had been depleted. As noted, the Chief stated that at the beginning of the 2006 season, approximately 96 helicopters were available for CWN work. See AR at 10 (D&F ¶ 12(b)) (40% of 241 CWN helicopters

available). Even if the data from the beginning of the 2006 season accurately reflected the situation in July 2007, the Forest Service would still have 41 helicopters (96 less 55) uncommitted and available for CWN work. This is more than sufficient to meet the Forest Service's helicopter needs for the 18 locations for which Erickson is challenging the Forest Service's override determination.

Nothing in the administrative record describes the helicopter firefighting resources that the Forest Service had available to it when the Chief issued the override. Although defendant asserts that only 40% of Type I and Type II (heavy and medium) helicopters were available for CWN work as of the day of the override, Def. Opp. at 17, the administrative record plainly states that the 40% figure reflected helicopter availability only at the beginning of the 2006 season and that on this basis, the Forest Service decided that it was advantageous to offer a larger number of exclusive use contracts in 2007. AR at 10 (D&F ¶ 12(b)). The administrative record does not state that only 40% of Type I and Type II helicopters were available for work as of the day of the override. In fact, there is nothing in the administrative record which specifies the number of available CWN helicopters at any time in 2007, let alone in the middle of the 2007 fire season. Defendant improperly mischaracterizes the record in this regard.

Defendant challenges Erickson's argument that the Forest Service could have obtained the necessary helicopter firefighting services for the duration of the protest period by placing CWN orders for 18 heavy and medium helicopters, positioning them in the same locations listed in the subject solicitation, and not releasing them until GAO issues its decision on Erickson's protest. Def. Opp. at 18. Defendant's response is simply to state that there is no contractual

obligation for an operator to accept a CWN order and therefore no ability for the Forest Service to guarantee helicopter availability by relying on the CWN contracts. See Def. Opp. at 18, 25-26. While defendant correctly notes that there is no contractual obligation for an operator to accept a CWN order, it does not follow that the Forest Service could not guarantee helicopter availability by relying on the CWN contracts. For example, during the two weeks between June 22, 2007, when the stay went into effect upon the agency being notified by GAO that Erickson had filed its protest, and July 9, 2007, when the Chief issued the override determination, the Forest Service did not even attempt to contact operators to assess whether they would accept CWN orders to cover the period of the stay or whether operators who, like Erickson, had pre-existing exclusive use contracts were willing to provide additional helicopters under those contracts.[3] The Forest Service could have taken steps to "guarantee" the availability of helicopters during the protest period without the need for overriding the stay.[4]

[3]Defendant also justifies the Forest Service's determination that it could not rely upon these reasonable alternatives to overriding the stay because the proposals of Erickson and other operators submitted in response to the challenged solicitation were rejected as technically unacceptable. See Def. Opp. at 16. The Forest Service rejected Erickson's proposal on the grounds that Erickson did not submit required technical information and therefore found its proposal deficient. See AR at 7 (D&F ¶ 3). The Forest Service has never found that Erickson or its helicopters were in any way deficient or inadequate for meeting the Forest Service's helicopter firefighting needs. Indeed, the Forest Service continues to hold a CWN contract with Erickson that covers all 18 of Erickson's S-64E helicopters, including the four helicopters that Erickson proposed for the exclusive use contracts. Erickson Br. at 10. There is no technical reason why the Forest Service could not have relied upon Erickson's helicopters or the helicopters of other operators whose proposals were found to be technically unacceptable by the Forest Service to meet its firefighting needs during the stay.

[4]Defendant also now asserts that the Forest Service "considered the records of helicopter requests" before the Chief made the override determination. See Def. Opp. at 5. There is nothing in the override determination or in the administrative record to support defendant's bald contention in this regard.

Despite defendant's repeated contention that the only way it could guarantee the availability of helicopter firefighting services this fire season was to override the stay and go forward with the exclusive use contracts awarded under the challenged procurement, the fact is that there was no reason for the Forest Service to reach this conclusion. Its experience last year clearly demonstrated that the Forest Service could have met its firefighting needs while GAO considers the merits of Erickson's protest. There was no rational reason for the Forest Service to conclude that only a stay override could do so. Moreover, Erickson has demonstrated that there is nothing the Forest Service can do to increase the number of helicopters available to it for firefighting this season. Regardless of the contractual mechanism used, there are only a finite number of helicopters available. See Docket No. 12 (Second Declaration of L. Allmaras ¶ 6). By failing to consider reasonable alternatives to a stay override as articulated above and in Erickson's previous submissions, the Chief essentially failed to consider important aspects of the problem and the stay override was arbitrary and capricious as a result. The Court should declare the override determination invalid.

Erickson has demonstrated that the override determination was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and the Court should issue a declaratory judgment so finding. As this Court has found in other cases challenging unreasonable override determinations, declaratory relief is preferable to injunctive relief because the latter imposes unnecessary burdens of proof upon plaintiffs and is less practical and efficient than declaratory relief. See Advanced Sys. Dev., 72 Fed. Cl. at 36. Any changes in circumstances after the Court invalidates the override determination will not give the Forest Service cause to issue a new override because the Forest Service will still be able to meet its

helicopter firefighting needs through the reasonable alternatives Erickson has presented, just as the Forest Service had been able to do in prior years. Thus, contrary to defendant's suggestion, declaratory judgment will fairly and permanently grant the relief Erickson requests. Def. Opp. at 28-30. Just because declaratory relief may have the same effect as an injunction in the circumstances of this case is no reason to require Erickson to meet the increased burden required for injunctive relief. See Erickson Br. at 6-7.

## II. Erickson Is Entitled to Injunctive Relief

If deemed necessary and appropriate, the Court should also permanently enjoin the Forest Service from overriding the automatic stay of contract performance pending GAO's ruling on the merits of Erickson's protest.[5] The Court should find that Erickson prevails on the merits because the override determination was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. The Court should also find that, absent relief, Erickson will suffer irreparable harm and that the balance of harms and the public interest both support granting injunctive relief. As demonstrated above, Erickson prevails on the merits. Thus, it has met the first prong of the test for injunctive relief.

Defendant has failed to show even the possibility of any harm to it or the public should the Court grant the injunctive relief Erickson requests. First, defendant admits that cost considerations did not factor into the Chief's decision to override the stay. Def. Opp. at 15.

[5]Erickson clearly requested that the Court enjoin the Forest Service from authorizing contract performance of the 18 CLINs in the solicitation that are the subject of Erickson's protest to GAO. Docket No. 1 (Complaint at 5). Defendant's apparent contention that it is unclear whether Erickson requested such relief is without merit.

Defendant also admits that because an injunction would not create any administrative burdens, the Chief also did not consider this factor in her decision to override the stay. Def. Opp. at 19. Instead, defendant relies only upon the possibility of harm to the public from the Forest Service's inability to guarantee the availability of helicopters to protect them from forest fires. As Erickson has shown through its argument on the merits, the Forest Service had other contractual mechanisms at its disposal to guarantee helicopter availability to protect the public from forest fires. Neither defendant nor the public can suffer any real injury when the government has alternative contractual means available through which it can continue to receive the needed services. See Hospital Klean of Texas, Inc. v. United States, 65 Fed. Cl. 618, 624 (2005). For this same reason, defendant's argument that an injunction is against the public interest because it would prevent the Forest Service from having a guaranteed source of helicopters to protect the public is unavailing.

As Erickson showed in its initial brief, Erickson will suffer irreparable harm if the Forest Service is allowed to continue to override the stay. Erickson Br. at 21-23. In response, defendant cites case law stating that "[n]ormally, an injury is not considered 'irreparable' if the only injury alleged is monetary loss." Def. Opp. at 21 (quoting Chapman Law Firm Co. v. United States, 67 Fed. Cl. 188, 193 (2005)). Erickson is not alleging mere monetary loss but rather lost opportunities to compete. For example, the Forest Service's reliance upon the new exclusive use contracts to provide helicopter firefighting services during the stay means Erickson has at least 18 fewer opportunities to receive CWN orders. Thus, even if Erickson is currently providing a helicopter under a CWN order, Erickson will be harmed once the Forest Service releases the helicopter and Erickson can no longer find additional CWN work. It is well-

established that a lost opportunity to compete constitutes irreparable harm. See, e.g., Reilly's Wholesale Produce v. United States, 73 Fed. Cl. 705, 717 (2006); Overstreet Elec. Co., Inc. v. United States, 47 Fed. Cl. 728, 744 (2000); Seattle Sec. Services, Inc. v. United States, 45 Fed. Cl. 560, 571 (2000).

Moreover, any monetary loss suffered by Erickson does constitute irreparable harm. In the remainder of the paragraph from Chapman not cited by defendant in its brief, the Court went on to say that the "normal" rule that monetary loss is not irreparable does not apply when a plaintiff challenges an agency's override determination:

> However, there are occasions, particularly in the arena of government contracting, in which an economic loss will not be compensable with money damages; in these situations, economic loss can rise to the level of irreparable injury. Accordingly, this court has found that lost profits, or even the loss of an opportunity to earn profits, is "sufficient to constitute irreparable harm."

Chapman, 67 Fed. Cl. at 193 (quoting Hospital Klean, 65 Fed. Cl. at 624). Therefore, as the only party facing injury, the balance of the hardships weigh strongly in favor of enjoining the Forest Service from continuing with overriding the automatic stay.

**Conclusion**

For the reasons set forth above and in Erickson's previous submissions, Erickson respectfully requests that the Court declare the Chief's decision to override the automatic stay of the 18 CLINs in RFP No. AG-024B-S-07-0008 that are the subject of Erickson's protest before the GAO arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and deny defendant's motion for judgment on the administrative record. Erickson also requests

that the Court enjoin defendant's override of the automatic stay and grant Erickson such further relief as the Court deems just and proper.

Respectfully submitted,

s/Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Ruth G. Tiger
Eric J. Pohlner
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: August 6, 2007